UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EDWARD L. BELFORTE and**
**PATRICIA A. BELFORTE,**                                   Chapter 13
    Debtors                                                    Case No. 10-22742-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**LIBERTY BAY CREDIT UNION**
    Plaintiff
v.                                                          Adv. P. No. 11-1008
**PATRICIA A. BELFORTE**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

Whereas, Liberty Bay Credit Union, f/k/a Telephone Workers Credit Union ("Liberty Bay" or the "Plaintiff"), filed a complaint, captioned "Complaint Objecting to Discharge of Debt" (the "Complaint"), against Patricia A. Belforte (the "Debtor" or the "Defendant") on January 7, 2011; and

Whereas, in its Complaint, Liberty Bay alleged that the Defendant's debt in the

1

amount of $4,469.51 is nondischargeable pursuant to 11 U.S.C. § 523(a)(8);[1] and

Whereas, according to Liberty Bay, the debt arose from a loan it made to Debtor; and

Whereas, Liberty Bay attached the following loan documents to its Complaint: 1) an "Open-End Plan Signature Plus Credit and Security Agreement" (the "Agreement"), which the Debtor executed on November 21, 2001; 2) an August 27, 2007 request by the Debtor to "rewrite [her] personal loan to $14,000 for 72 [months] . . . for tuition [and] books for [her] children's schools . . . ;" and 3) a Statement of Account dated August 31, 2007 reflecting an $4,469.51 advance; and

Whereas, the Statement of Account attached to its Complaint reflected that Liberty

---

[1] Section 523(a)(8) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for --
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>   (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

2

Bay advanced funds to the Debtor in the amount of $4,469.51 as a "loan advance-share trans to prin" with a daily periodic rate of .038356% and an annual percentage rate of 14%; and

Whereas, on January 17, 2011, the Debtor filed a "Motion to Dismiss Liberty [sic] Credit Union's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) Made Applicable by Bankr. R. 7012, with Prejudice" (the "Motion to Dismiss") in which she asserted that Liberty Bay failed to state a claim upon which relief could be granted because the loan it made to her was not an educational loan pursuant to § 523(a)(8) but was merely a "general unsecured loan for an unspecified use;" and

Whereas, in support of her position, the Debtor asserted that the loan did not satisfy the test set forth in Tift Co. Hosp. Auth. v. Nies (In re Nies), 334 B.R. 495 (Bankr. D. Mass. 2005), a decision in which this Court ruled that to be nondischargeable the loan in question must be "'(1) an educational loan, (2) made as part of a program, . . . (3) by a non-profit institution,'" id. at 501 (quoting A. L. Lee Mem'l Hosp. v. McFadyen (In re McFadyen), 192 B.R. 328, 331 (Bankr. N.D.N.Y. 1995)); and

Whereas, the Debtor further argued that Liberty Bay did not grant her the loan under a "program," and it failed to determine the purpose for the loan before advancing funds to her, *see* In re Nies, 334 B.R. at 501; and

Whereas, on February 8, 2011, Liberty Bay filed an Opposition to Defendant's Motion to Dismiss Complaint Objecting to Discharge (the "Opposition") in which it asserted that the Complaint contained sufficient allegations to support the

3

nondischargeability of the debt pursuant to § 523(a)(8) because "[a]s matter of law, a credit union is a non-profit organization . . and/or a governmental unit within the meaning of section 523(a)(7)[sic];" and

Whereas, Liberty Bay relied upon the decision of the United States Court of Appeals for the First Circuit in TI Fed. Credit Union v. Delbonis, 72 F.3d 921, 924 (1st Cir. 1995), in which the First Circuit observed that there was "no clear test" for determining when a credit union is-or is not-a nonprofit institution, id. at 927, and held that *federal* credit unions are governmental units pursuant to § 523(a)(8) and § 101(27), *id.* at 934;[2] and

Whereas, on February 15, 2011, the Debtor filed the "Debtor's Reply to Opposition of Liberty Bay Credit Union to Defendant's Motion to Dismiss Complaint Objecting to Discharge" (the "Debtor's Reply") in which the Debtor noted that Liberty Bay is a state chartered credit union and, therefore, is not a governmental unit, distinguishing the characteristics of the Liberty Bay loan from the loan considered by the First Circuit in DelBonis; and

Whereas, the Court held a hearing on March 15, 2011 on the Motion to Dismiss and the Opposition, at which the parties were instructed to file supplemental briefs by March 31, 2011; and

---

[2] In TI Fed. Credit Union v. Delbonis, 183 B.R. 1, 4 (D. Mass. 1995), *aff'd*, 72 F.3d 921 (1st Cir. 1995), the district court held that federal credit unions are nonprofit organizations for the purpose of § 523(a)(8). The United States Court of Appeals for the First Circuit in TI Fed. Credit Union, 72 F.3d at 924, declined to reach the issue of whether federal credit unions are nonprofit organizations for the purpose of § 523(a)(8) and instead held that federal credit unions are governmental units. The First Circuit did not consider whether state chartered credit units are governmental units.

4

Whereas, Liberty Bay filed a "Supplemental Brief in Support of Liberty Bay Credit Union's Opposition to Defendant's Motion to Dismiss Complaint Objecting to Discharge" (the "Supplemental Brief") in which it argued that the $4,469.51 loan advance was an educational loan as it was based on the Debtor's representation that she needed the monies to fund her children's educations and because the loan had many of the characteristics of an educational loan, such as a lack of security, a lack of a guarantor, and a lack of business considerations; and

Whereas, the Debtor filed the "Debtor's Memorandum in Further Support of Debtor/Defendant's Motion to Dismiss Liberty Credit Union's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) Made Applicable by Bankr. R. 7012(b), with Prejudice" (the "Debtor's Memorandum") in which she asserted that the court's holding in DelBonis, that federal credit unions are governmental units, does not support Liberty Bay's assertion that as a purportedly state chartered credit union, it is a governmental unit for the purpose of § 523(a)(8); and

Whereas, the Debtor maintained that discovery is necessary to resolve the issue of Liberty Bay's status as a governmental unit, adding that the $4,469.51 loan advance is not an "educational benefit" because Liberty Bay did nothing to determine whether the loan would be used for educational purposes, and that the loan at issue has an interest rate of 14%, which is an interest rate that is higher than typical educational loans; and

Whereas, in Sunshine Three Real Estate Corp. v. Housman (In re Sunshine Three Real Estate Corp.), 426 B.R. 6 (Bankr. D. Mass. 2010), this Court stated:

5

A motion to dismiss under Rule 12(b)(6) must be granted unless the complaint contains sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir. 2009) (citing Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, L.E.2d 868 (2009), and quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)) . . . .

Sunshine Three Real Estate Corp., 426 B.R. at 17; and

Whereas, if matters outside of the pleadings are presented to the Court and are not excluded by the Court, the Court must treat the motion to dismiss as a motion for summary judgement, *see* Fed. R. Civ. P 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012; and

Whereas, Liberty Bay attached the following documents to its Complaint, to which the Debtor did not object: 1) the Agreement between the Debtor and Liberty Bay dated November 21, 2001, 2) the Debtor's handwritten request for her loan to be rewritten, and 3) the Debtor's Statement of Accounts, dated August 31, 2007; and

Whereas, although Liberty Bay alleges that it is a non-profit, state chartered credit union, a number of genuine issues of material fact and law exist; and

Whereas, based upon the existing record, the Court is unable to determine whether Liberty Bay, is a governmental unit for purposes of § 523(a)(8),[3] whether the loan to the

---

[3] In DelBonis, the First Circuit stated:

The term "government unit," as employed in 11 U.S.C. § 523(a)(8), means: "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, ... a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101. Legislative history suggests that Congress intended to "defin[e]

Debtor satisfies the test set forth in Nies; whether Liberty Bay made an educational loan to the Debtor as part of a program funded by a governmental unit or nonprofit institution, or whether it simply made an advance pursuant to the existing Open-End Plan Signature Plus Credit and Security Agreement; and

---

> 'government unit' in the broadest sense." H.Rep. No. 95-595, 95th Cong., 1st Session 311 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5759, 5963, 6268, reprinted in App. 2 Collier on Bankruptcy, pt. II, at 311 (Lawrence P. King, ed., 15th ed. 1995). We think it evident, based on this, that 11 U.S.C. § 101 encompasses federal credit unions as federal instrumentalities, but refrain from making a categorical holding to that effect at this juncture. The legislative history indicates that Congress meant to temper its exhortation to define broadly. According to that history, we must demonstrate that federal credit unions have an active relationship with the federal government, that they carry out some governmental function. Id. *"'[I]nstrumentality' does not include entities that owe their existence to State action such as the granting of a charter or a license, but that have no other connection with a State or local government or the Federal Government.* Id.

72 F.3d at 930-31 (emphasis added).  The First Circuit also observed:

> Congress did not treat federal and state credit unions alike; it addressed federal and state credit unions in entirely different sections of the Internal Revenue Code. La Caisse [Populaire Ste. Marie v. U.S.], 563 F.2d [505] at 509 [(1st Cir. 1997)]. State credit unions are exempted under Section 501(c)(14), whereas, federal credit unions are exempted under Section 501(c)(1). Id. Section 501(c)(14), unlike Section 501(c)(1), neither mentions federal instrumentalities nor draws a direct relationship between the federal government and the services provided by state credit unions. These aspects of the tax exemption federal credit unions receive support our belief that Congress regards federal credit unions as federal instrumentalities.

Id. at 934.

Now, therefore, the Court finds and rules as follows:

(1) The Court shall treat the Motion to Dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012. A court is required to grant summary judgment to the moving party if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. 7056.

(2) For the reasons set forth above, the Court finds that there are genuine issues of material fact, precluding the entry of summary judgment; and

(3) The Court shall enter an order, denying the Motion to Dismiss.

By the Court,

*Joan N. Feeney*

Dated: May 24, 2011

Joan N. Feeney
United States Bankruptcy Judge