UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EDWARD L. BELFORTE and**
**PATRICIA A. BELFORTE,**                         Chapter 13
    Debtors                                  Case No. 10-22742-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**LIBERTY BAY CREDIT UNION**
    Plaintiff
v.                                                Adv. P. No. 11-1008
**PATRICIA A. BELFORTE**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

Liberty Bay Credit Union, f/k/a Telephone Workers Credit Union ("Liberty Bay" or the "Credit Union"), filed a complaint, entitled "Complaint Objecting to Discharge of Debt" (the "Complaint"), against Patricia A. Belforte (the "Debtor" or the "Defendant") on January 7, 2011.  In its Complaint, Liberty Bay alleged that the Defendant's debt in the amount of $4,469.51 is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).[1]  According to

---

[1] Section 523(a)(8) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

1

Liberty Bay, the debt arose from a loan it made to Debtor which was memorialized by 1) an "Open-End Plan Signature Plus Credit and Security Agreement" (the "Original 2001 Agreement"), which the Debtor executed on November 21, 2001; 2) an August 27, 2007 request by the Debtor to "rewrite [her] personal loan to $14,000 for 72 [months] . . . for tuition [and] books for [her] children's schools . . . . " (the "August 2007 Agreement"); and 3) a Statement of Account dated August 31, 2007 reflecting an advance of $4,469.51.

The Debtor moved to dismiss the adversary proceeding. On May 24, 2011, this Court entered an order in which it treated the Debtor's Motion to Dismiss as a motion for summary judgment and denied the motion. The parties filed no further pleadings after the issuance of the Court's Memorandum and Order.

Almost one year later, on April 4, 2012, the Court issued a Notice of Inactivity

---

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for --
> 
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> 
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> 
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

warning the parties that the adversary proceeding would be dismissed in the absence of a motion in opposition to the proposed dismissal. Thereafter, Liberty Bay filed a Response; the Debtor filed an Answer to the Complaint; and the Court issued a Pretrial Order.

On June 28, 2012, the parties filed a "Joint Motion for Final Determination and Waiver" in which they requested the Court to make findings of fact and conclusions of law based upon stipulated facts and waived their right to a trial on the merits. The Court granted the Joint Motion, treating it as, in effect, a cross-motions for summary judgment. The Court further ordered the parties to file briefs within 21 days. The Court now makes its findings of fact and conclusion of law based upon the parties' stipulated facts. The sole issue is whether Liberty Bay made an educational loan to the Debtor that is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8).

## II. FACTS

Liberty Bay was formed in Boston on March 3, 1917. It is a state-chartered organization subject to the regulations of Chapter 171, Part 1 Administration of the Government, of the General Laws of Massachusetts. Liberty Bay issues loans to its members and collects interest on its deposits. Chapter 171, §6A of the General Laws of Massachusetts provides that a credit union organized under Chapter 171 and insured by the National Credit Union Share Insurance Fund may exercise any power or engage in an activity permissible for a federal credit union subject to the powers of the State Banking Commissioner to determine whether or not competition among credit unions will be unreasonably affected and whether public convenience and advantage will be promoted.

3

In addition, Liberty Bay is a tax-exempt entity under § 501(c)(14) of the Internal Revenue Code.

At all relevant times, the Debtor was a member of the Credit Union. On November 21, 2001, the Debtor entered into the Original 2001 Agreement with the Credit Union to obtain an unsecured loan for an unspecified use. Under the terms of the Original 2001 Agreement, the Debtor's line of credit was in the amount of ten thousand ($10,000.00) dollars. Liberty Bay exercised no oversight as to how the Debtor spent funds it advanced to her for the 2001 loan, and the Debtor could have used the funds in any manner that she chose.

On August 27, 2007, the Debtor submitted, in writing, a request to increase the ten thousand ($10,000.00) dollar loan under the Original 2001 Agreement to fourteen thousand ($14,000.00) dollars for seventy-two (72) months. On August 31, 2007, the Credit Union agreed and granted the Debtor a fourteen thousand ($14,000.00) dollar line of credit (the "August 2007 Agreement") by advancing four thousand four hundred sixty-nine and 51/100 ($4,469.51) dollars. It added the original balance of the 2001 loan, nine thousand five hundred thirty ($9,530.00) dollars, to the balance of the 2007 loan. The August 2007 Agreement extinguished the Original 2001 Agreement. Liberty Bay exercised no oversight as to how the Debtor spent the funds advanced to her under the 2007 loan, and the Debtor could have used the funds loaned in any manner that she chose.

The Credit Union granted the loan under the August 2007 Agreement to the Debtor without requiring security or additional guarantors and collected regular payments from

the Debtor until the Petition Date. The August 2007 Agreement was supported by adequate consideration from both the Credit Union and the Debtor. The personal loan balance on the loan owed by the Debtor to the Credit Union accrued interest at fourteen (14%) percent annual interest. The Debtor repaid approximately thirteen thousand ($13,000.00) dollars to the Credit Union under the August 2007 Agreement over the course of the loan period, August 2007 through November 2010.

The loan at issue is not guaranteed by a government unit or agency. The Credit Union had a student loan program in existence when it extended credit to the Debtor in August 2007 but the subject loan was not granted through that program.

### III. POSITIONS OF THE PARTIES

A. <u>The Debtor</u>

The Debtor asserts that summary judgment is warranted and her debt should be discharged because (1) the funds were a general unsecured line of credit and were not received as an educational benefit protected from discharge under § 523(a)(8)(A)(ii); and (2) the funds were not an educational benefit loan by a governmental unit protected from discharge under § 523(a)(8)(A)(i) because the funds were made available to her under a general unsecured line of credit and the Credit Union, a state-chartered credit union, is not a governmental unit.

With respect to the first argument, the Debtor asserts that the loan was not "an obligation to repay funds received as an educational benefit, scholarship, or stipend" protected from discharge under § 523(a)(8)(A)(ii). She emphasizes that it was merely a

5

general unsecured line of credit which was not funded through an educational lending program. She also emphasizes that the Credit Union did not attempt to determine how she intended to use the funds, and the terms of the loan, including the 14% interest rate, suggest a business purpose of the loan.

The Debtor relies upon the decision in Tift Co. Hosp. Auth. v. Nies (In re Nies), 334 B.R. 495 (Bankr. D. Mass. 2005). In that case, this Court held that a $75,000 loan from a non-profit hospital to a physician under a physician recruitment program, which provided that 25% of the loan would be forgiven after each twelve month period that the physician practiced in the hospital's county and which loan amount was the same as the physician's existing student loan debt, was not for educational purposes and, therefore, was dischargeable, particularly where the hospital did not require the physician to document the use of the funds. Citing In re Nies, the Debtor contends that its loan does not have an educational purpose because the Credit Union made no attempt to ascertain whether the funds were being used for educational purposes and the loan's 14% annual interest rate and lack of funding through Liberty's Bay's educational lending program demonstrate that the Credit Union had a business purpose in granting the loan.

With respect to the second argument, the Debtor maintains that the loan is not "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit" protected from discharge under § 523(a)(8)(A)(i) because the loan is not an educational benefit loan and the state-chartered credit union is not a governmental unit. The Debtor asserts that the Credit Union is not a governmental unit for purposes of §

6

523(a)(8) because it is a state-chartered credit union and only federal-chartered credit unions are considered governmental units.² *See* TI Fed. Credit Union v. DelBonis, 72 F.3d 921 (1st Cir. 1995). The Debtor maintains that the Credit Union reads the decision in DelBonis too broadly to support its argument that Liberty Bay, a state credit union, is a governmental unit because the United States Court of Appeals for the First Circuit specifically differentiated between state and federal credit unions. In the Debtor's view, the First Circuit determined that most federal credit unions are governmental units, but did not hold that state credit unions are governmental units, noting that Congress distinguished federal and state credit unions in the Internal Revenue Code. Id. at 934.

B. The Credit Union

The Credit Union asserts that summary judgment is warranted and the Debtor's debt should not be discharged because (1) the funds were lent for a valid educational benefit as the Debtor asked for the increased loan amount for her children's tuition and expenses; and (2) the funds were an educational benefit loan by a governmental unit because of its similarities to federal credit unions.

In support of its first argument, Liberty Bay asserts that the funds were received as

---

² Pursuant to 11 U.S.C. § 101(27), "[t]he term 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

7

an educational benefit because the Debtor asked for money for her children's education, and that the actual use of the funds does not affect the analysis. The Credit Union points to the Debtor's handwritten note requesting an increase in her personal loan and an extension of the term because of the need for money to pay for her children's tuition and books to show that the funds loaned to Debtor pursuant to the August 2007 Agreement were received for an educational benefit. The Credit Union cites <u>Roy v. Sallie Mae (In re Roy)</u>, Case No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 8, 2010), to support its position that funds received for the purpose of paying educational expenses for either the debtor or the debtor's children are funds for an educational benefit, regardless of the actual use of the funds. The Credit Union also cites <u>In re Nies</u> to support its argument that the purpose of the loan guides the analysis, not the actual use of the loan, adding that the handwritten note is determinative. Further, Liberty Bay argues that the structure of the loan without cosigners or other security are characteristics of educational loans. Lastly, although "educational benefit" is undefined, the Credit Union, citing <u>In re Roy</u>, contends that educational benefit should be defined broadly because Congress has expanded section 532(a)(8) to encompass "a broader range of educational benefit obligations."

In support of its second argument, the Credit Union asserts again that the loan was an educational benefit loan as discussed above and that it is a governmental unit subject to protection under § 523(a)(8)(A)(i) because it is a tax-exempt credit union with similar attributes and powers as the federal credit union in <u>DelBonis</u>. Therefore, in its view, it also should be considered a governmental unit, regardless of the fact that it is a state credit

8

union. The Credit Union does not mention the DelBonis court's dicta regarding the differences between state and federal credit unions in its analysis. Instead, the Credit Union focuses on similarities between the two credit unions and between the Massachusetts Credit Union Act and the Federal Credit Union Act to support its assertion that it is a governmental unit. Liberty Bay also argues that its status as a governmental unit requires that the debt be declared nondischargeable.

IV. DISCUSSION

A. Summary Judgment Standard

The United States Court of Appeals for the First Circuit has stated:

It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or depositions—that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994) (citations omitted, footnote omitted). Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. *See* Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782, n.4 (1st Cir. 2011).

B. Educational Loans under 11 U.S.C. § 523(a)(8)

Although the purpose of the Bankruptcy Code is to guarantee honest debtors a "fresh start" through the bankruptcy discharge, Grogan v. Garner, 498 U.S. 279, 286–87 (1991), Congress legislated under § 523(a)(8) that certain educational loans are excepted from discharge unless the debtor can establish "undue hardship." See 11 U.S.C. § 523(a)(8). Although the issue of whether repayment may constitute an undue hardship arises with great frequency in bankruptcy courts, a threshold issue is whether the loans qualify as educational loans in the first place. According to the Court in Rumer v. Am. Educ. Servs. (In re Rumer), 469 B.R. 553 (Bankr. M.D. Pa. 2012),

> [s]ection 523(a)(8) protects four categories of educational loans from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a government unit or nonprofit institution; (3) loans received as an educational benefit, scholarship, or stipend; and (4) any 'qualified educational loan' as that term is defined in the Internal Revenue Code.

Id. at 561.

In this case, the Court must determine whether the loan in question satisfies the provisions of section 523(a)(8)(A)(i) or (a)(8)(A)(ii). In other words, the Court must determine whether the Credit Union is a governmental unit that made an educational loan for purposes of section 523(a)(8)(A)(i), and whether the Debtor incurred an obligation to repay funds received as an educational benefit for purposes of section 523(a)(8)(A)(ii).

"Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and

harm to future students as well as taxpayers." Desormes v. Charlotte School of Law (In re Desormes), No. 10-50079, 2012 WL 4106765 at * 2 (Bankr. D. Conn. Sept. 18, 2012)(quoting Cazenovia College v. Renshaw (In re Renshaw), 222 F.3d 82, 87 (2d Cir. 2000)). In Desormes, the debtor argued that because the "'indebtedness evidenced by th[e] Note shall be repaid immediately upon Maker's receipt of Title IV Funds', he would not have a student loan obligation if such funding did not become available." In re Desormes, 2021 WL 4106765 at *1. The court observed that the essence of the debtor's argument was that unless Title IV Funds became available to him, he would get fee a free education. Id. The court rejected the argument observing the following:

> [t]he subject text in the Note relates to the timing of repayment, not the obligation to repay. Moreover, the purpose of the loan was clearly *"for tuition and fees owed to Payee in connection with the educational services obtained by Kenneth Desormes"* . . . . (emphasis added). That purpose was not affected by whether the plaintiff received Title IV Funding. It is not insignificant that in the plaintiff's bankruptcy Schedule F ("Creditor's Holding Unsecured Nonpriority Claims"), the plaintiff listed the Note as the "2008 Promissory Note[,] Tuition Debt ". . . .

Id. at * 2 (emphasis in original).

In In re Nies, 334 B.R. 495 (Bankr. D. Mass. 2005), this Court also focused on the purpose of the loan, ruling that the loan in question must meet the following factors to be nondischargeable: "'(1) an educational loan, (2) made as part of a program . . . (3) by a non-profit institution,'" Id. at 501 (quoting A. L. Lee Mem'l Hosp. v. McFadyen (In re McFadyen), 192 B.R. 328, 331 (Bankr. N.D.N.Y. 1995)). In re Nies was decided before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

11

which separated § 523(a)(8) into two independent clauses, i.e, (A)(i) and (A)(ii), and added subsection (B). Subsection (B) includes qualified educational loans defined in the Internal Revenue Code and is not at issue in this case. Only section 523(a)(8)(A)(i) and (a)(8)(A)(ii) are at issue. Because § 523(a)(8) now has a test under (A)(i) for "an educational benefit . . . loan made . . . by a governmental unit" and (A)(ii) for "an obligation to repay funds received as an educational benefit," this Court's decision in Nies, while helpful, is not determinative of the outcome of this adversary proceeding.

Although § 523(a)(8)(A)(i) requires that the loan be made by a governmental unit or nonprofit institution, § 523(a)(8)(A)(ii) no longer has any such requirement. In re Roy, 2010 WL 1523996 at * 1 (citing Sensient Techs. Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828, 831-32 (Bankr. E.D. Wis. 2008), and Plumbers Joint Apprenticeship and Journeyman Training Comm. v. Rosen (In re Rosen), 179 B.R. 935 (Bankr. D. Or. 1995)). Moreover, the term "educational benefit" is not defined in the Bankruptcy Code, so courts have turned to legislative history for guidance. "Educational loans are different from most loans. They are made without business considerations, without security, without cosigners, and relying [sic] for repayment solely on the debtor's future increased income resulting from the education." U.S. Dep't of Health and Human Servs. v. Smith, 807 F.2d 122, 125 (8th Cir. 1986) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess., 133, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6094). Courts have expanded "educational benefit" to encompass educational loans for the benefit of the borrower's children. In re Roy; In re Pelkowski, 990 F.2d 737 (3d Cir. 1993)(" We find no support in the statutory language for

12

any distinction based on the status of the borrower as student or as beneficiary of the education. Section 523(a)(8) does not refer to a "student debtor" but applies to limit discharge of any "individual debtor" from "any debt" for a covered educational loan. In the absence of clearly expressed contrary legislative intent, the statutory language must be regarded as conclusive."). In addition, according to the court in In re Rosen, 179 B.R. at 938, "[t]he language of section 523(a)(8) refers to educational obligations." The court in Rosen added:

> It is not limited to obligations pertaining to education received at institutions of higher or post-secondary education. The Higher Education Act, the nondischargeability provisions added to the Higher Education Act and the nondischargeability provisions originally enacted as part of the Bankruptcy Reform Act of 1978 may have been so limited. Subsequent amendments to section 523(a)(8), however, have significantly broadened its scope. Most significantly, prior to 1984, section 523(a)(8) barred the discharge, inter alia, of certain loans made under any program funded in whole or in part by a governmental unit or "nonprofit institution of higher education." The Bankruptcy Amendments and Federal Judgeship Act of 1984, however, deleted the term "of higher education." The debtor would basically have me read the term back into section 523(a)(8) by imposing a post-secondary or higher education requirement. The language of the statute is not so limited.

Id. Moreover, as the court noted in Baiocchi,

> Congress' decision to create a new section, set off from § 523(a)(8)(A)(i), also supports [the creditor's] argument that this debt is nondischargeable. BAPCPA's separation of the phrase "obligation to repay funds received as an educational benefit" from the phrases "loan made, insured or guaranteed by a governmental unit" and "program funded in whole or in part by a nonprofit institution" in § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit obligations, such as those in the instant case.

389 B.R. at 831-32. *See also* In re Roy, 2012 WL 1523996 at * 1. The court in Baiocchi

13

observed:

> The fact that [the creditor's] program serves a purpose beyond the debtor's education does not necessarily mean that the funds received by the Debtor did not constitute an "educational benefit." A similar claim was made in Burks v. Louisiana (In re Burks), 244 F.3d 1245, 1247 (11th Cir.2001), where the court examined the debtor's obligation to repay loans received for his graduate education, either through serving as an instructor at an "other race" institution or through repayment plus interest. The Eleventh Circuit sided with the "numerous" courts holding that where funds are loaned to students to assist them with their education in exchange for an agreement to fulfill a service obligation or in the alternative to repay the amount received plus interest, the students' obligations are nondischargeable. Id. at 1246–47.

In re Baiocchi, 389 B.R. at 831.

Numerous courts have adopted a test that focuses on the substance of the transaction to determine whether the loan was educational. In re Nies, 334 B.R. at 501-02. In McKay v. The Vanderbilt Univ. (In re McKay), 366 B.R. 144 (Bankr. D. Or. 2007), *aff'd*, 558 F.3d 888 (9th Cir. 2009), the court held that the university's deferment of student payments is an educational loan based on the "nature of the debt," even though funds were not issued under a loan program. Id. at 148. Courts have also reviewed whether the loan serves a business purpose or an educational purpose. As noted above, this Court in In re Nies held that a non-profit hospital's loan to a doctor in the amount of $75,000, the same amount as the doctor's outstanding student loan debt, was not an educational loan because the hospital did not require the doctor to document his outstanding student loans, it did not require the doctor to pay off his student loans with the money he earned, it made no attempt to determine how the doctor used the funds, and it adopted a recruitment program whereby the loan would be forgiven at the rate of 25% for each year that the doctor worked

14

in the hospital's county. 334 B.R. at 505; *see also* Resurrection Med. Center v. Lakemaker (In re Lakemaker), 241 B.R. 577, 580 (Bankr. N.D. Ill. 1999) (holding that salary advance was not an educational benefit or educational loan made by employer).

With respect to the analysis under § 523(a)(8)(A)(i), a "governmental unit," as employed in 11 U.S.C. § 523(a)(8), means: "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27); DelBonis, 72 F.3d at 930-31. The First Circuit Court of Appeals in DelBonis held that the federal credit union lender in the case was a governmental unit because of its relationship with the federal government, the governmental function that it carries out, and its tax exempt status. DelBonis, 72 F.3d at 935. Although the First Circuit determined that federal credit unions are generally governmental units, the DelBonis court differentiated between federal and state credit unions. The court noted that federal and state credit unions are given tax exempt status in different sections of the Internal Revenue code and "unlike federal credit unions, [state credit unions] are neither chartered under the Federal Credit Union Act, nor regulated by the NCUA [the National Credit Union Administration]." Id. at 933-35. Indeed, the First Circuit stated the following with respect to whether federal credit unions are federal instrumentalities:

> The legislative history indicates that Congress meant to temper its exhortation to define broadly. According to that history, we must demonstrate that federal credit unions have an active relationship with the

15

federal government, that they carry out some governmental function. '[I]nstrumentality' does not include entities that owe their existence to State action such as the granting of a charter or a license, but that have no other connection with a State or local government or the Federal Government.

Id. at 931.

C. Analysis

Upon consideration of the standard for summary judgment and the case law summarized above, the Court finds that (1) under the plain language of 11 U.S.C. § 523(a)(8)(ii), the August 2007 Agreement is a loan for an educational benefit because the Debtor requested additional sums for her children's' education. The amount outstanding under the August 2007 Agreement is excepted from discharge under 11 U.S.C. § 523(a)(8)(ii). Accordingly, this Court need not decide whether the Credit Union, as a state-chartered credit union, is a governmental unit for purposes of 11 U.S.C. § 523(a)(8)(i).

With respect to the requirements of § 523(a)(8)(A)(ii), the purpose of the August 2007 Agreement was to increase an existing unsecured personal line of credit "for tuition [and] books" for the Debtor's children's education. The Debtor expressly set forth the purpose of the loan in her handwritten note submitted to the Credit Union and it is immaterial that there were no controls on the use of funds. *See* In re Pelkowski, 990 F.2d 737, 741 (3d Cir. 1993) (quoting The Educ. Resources Inst., Inc. v. Varma (In re Varma), 149 B.R. 817, 818 (Bankr. N.D. Tex. 1992)) ("The relevant inquiry into the applicability of [section 523(a)(8)] is the purpose of the loan, not the beneficiary of the education."). The Credit Union's decision to extend an outstanding personal line of credit instead of

16

rewriting the loan as part of the Credit Union's educational loan program does not foreclose that the increase in the line of credit was "an obligation to repay funds received as an educational benefit." *See* In re McKay, 366 B.R. at 147; Roosevelt Univ. v. Oldham (In re Oldham), 220 B.R. 607, 612-13 (Bankr. N.D. Ill. 1998) ("The court adheres to the view that the substance of the debt and what it was incurred for should control over the form in which the debt is created or structured."). Although the Credit Union made no attempt to oversee how the funds in the August 2007 Agreement were spent and the Debtor could have used the funds in any way she saw fit, the language employed by Congress is to be construed broadly to include loans where the use of the funds is not controlled. *See* Baiocchi, 389 B.R. at 831-32. Moreover, the Debtor was explicit about her intended use of the funds.

Because courts have expanded the types of loans included in the educational benefit category, and in light of the 2005 amendments, the Debtor's request for funds for her children's education are funds for an "educational benefit." As in Pelkowski, funds for the benefit of the borrower's children are included in educational benefit. 990 F.2d at 741. Additionally, even though the Credit Union may have had an additional business purpose to increasing the loan to obtain 14% annual interest, an additional purpose does not remove the loan from the educational benefit category so long as there is also an educational purpose. Baiocchi, 389 B.R. at 831-32. The Baiocchi court observed that "BAPCPA's separation of the phrase 'obligation to repay funds received as an educational benefit' from . . . § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit

17

obligations." 389 B.R. at 831-32. *See also* <u>In re Roy</u>, 2010 WL 1523996 at * 1.

Although Liberty Bay had already extended an unprotected $10,000.00 loan to the Debtor in 2001 and the purposes of protecting educational loans from bankruptcy discharge to encourage lending is not directly furthered by this holding, the Court cannot disregard the plain language of the statute. <u>Baiocchi</u>, 389 B.R. at 830 (citing <u>Clark v. Chicago Mun. Credit Union (In re Clark)</u>, 119 F.3d 540, 546 (7th Cir. 1997)) ("Where the plain meaning of a statute is not ambiguous, and the application of the plain meaning does not lead to an "absurd result," a court is bound by that interpretation."). Under these circumstances, the Court concludes that the obligation is nondischargeable.

V. CONCLUSION

Upon consideration of the foregoing, the Court shall enter an order granting the motion for summary judgment filed by Liberty Bay and denying the motion for summary judgment filed by Debtor.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
Dated: October 1, 2012  United States Bankruptcy Judge

18